**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Marte H.D.,

Petitioner,

v.

Markwayne Mullin, et al.,

Respondents.

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

Civil File No. 26-04500 (MJD/EMB)

---

Pamela Guerrero, Bienvenidos Law Firm, Inc., Counsel for Petitioner.

Sarah Mazzie, David W. Fuller, Assistant United States Attorneys, Counsel for Respondents.

---

This matter is before the Court on Petitioner Marte H.D.'s Petition for Writ of Habeas Corpus. (Doc. 1.) Petitioner claims he is being detained in violation of the Fourth and Fifth Amendments. Respondents counter that Petitioner is subject to mandatory detention under 8 U.S.C. §§ 1225(b)(2) and 1226(c).

## I. FACTS[1]

Petitioner is a citizen of Mexico, who arrived to the United States in 2022 without inspection. (Doc. 1 ¶ 35.) Before his detention, Petitioner was living in

[1] Facts not disputed are deemed admitted. See Paula G. v. Bondi, No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).

Big Lake, Minnesota with his wife and two young children, all of whom are U.S. citizens. (Id.) Petitioner had been working in landscaping prior to being detained. (Id.)

Petitioner has a criminal record. On December 16, 2025, Petitioner was convicted in Hennepin County for driving while impaired. (Doc. 5-3 at 2.) On September 12, 2026, Petitioner was arrested by local law enforcement and transferred to the Sherburne County Jail for 3rd degree assault following a "family altercation" involving Petitioner's grandfather-in-law. (Doc. 1 ¶ 36; Doc. 5-5.)

On September 13, 2026, ICE/ERO encountered Petitioner at the Sherburne County Jail. (Doc. 5-1 at 2.) ICE/ERO conducted a records check and interviewed Petitioner, and they determined that Petitioner was "present in the United States unlawfully." (Id.) On September 14, 2026, ICE/ERO Supervisory Detention and Deportation Officer issued a Form I-200, Warrant for Arrest of Alien for Petitioner's arrest and lodged a Form I-247, Immigration Detainer for Petitioner. (Id.; Doc. 5-3 at 2.)

Also on September 14, 2026, Petitioner was ordered released on his own recognizance based on the criminal case. (Doc. 1 ¶ 37.) Petitioner, however, was

not released, and he was instead served the I-200 and rebooked into Sherburne County Jail under ICE custody. (Id.; Doc. 5-1 at 2.)

On September 16, 2026, ICE/ERO issued Petitioner a Notice to Appear ("NTA"), charging Petitioner as removable. (Doc. 5-1 at 2; Doc. 5-4.) ICE/ERO served the NTA on Petitioner on the same day. (Doc. 5-1 at 2.) Petitioner remains detained at Sherburne County Jail. (Doc. 1 ¶ 20.)

Petitioner filed the instant Petition for Writ of Habeas Corpus on October 15, 2026. (Doc. 1.) That same day, the Court issued an Order to Show Cause (Doc. 4.) On October 21, 2026, Respondents submitted a response. (Doc. 5.) In addition to their response, Respondents filed a declaration from Benjamin Northwood, an ICE Deportation Officer, a Warrant for Arrest of Alien (Form I-200), a Record of Deportable/Inadmissible Alien (Form I-213), and a 2026 Notice to Appear, and Petitioner's 2026 Criminal Complaint. (Docs. 5-1, 5-2, 5-3, 5-4, 5-5.) Petitioner submitted a reply on October 26, 2026. (Doc. 6.)

## II. DISCUSSION

Petitioner argues that he is currently detained in violation of 1) the Fourth Amendment and 2) the Fifth Amendment procedural and substantive protections. (Doc. 1 ¶¶ 42–72.)

**A. Jurisdiction**

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). District courts have jurisdiction to hear habeas challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

Id. at 693 (citations omitted). This "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." Id. The petitioner bears the burden to prove illegal detention by a preponderance of the evidence. See Belsai D.S. v. Bondi, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

**A. Effect of Avila v. Bondi on Petitioner's Claims**

Respondents argue that Petitioner is subject to mandatory detention pursuant to § 1225(b)(2), as confirmed by the Eighth Circuit in Avila v. Bondi 170 F.4th 1128 (8th Cir. 2026) as well as the Laken Riley Act. (Doc. 5 at 3–4.) While the Eighth Circuit's decision in Avila would preclude a statutory claim premised on

§ 1225, Avila does not foreclose constitutional or statutory claims not raised in that case. The Court therefore turns to Petitioner's constitutional arguments.

**B. Fifth Amendment Due Process**

Petitioner applies the Mathews v. Eldridge balancing test to argue that his continued detention without an individualized hearing violates his constitutional due process rights guaranteed by the Fifth Amendment. (Doc. 1 ¶¶ 68–71 (citing Mathews, 424 U.S. 319 (1976).)

Respondents state that Petitioner's due process claim fails for three reasons. First, Respondents contend that Petitioner's procedural due process claim is "truly a substantive due process claim recast under the auspices of substantive due process." (Doc. 5 at 19.) Relying on Connecticut Dep't of Pub. Safety v. Doe, 538 U.S. 1, (2003), Respondents maintain that Petitioner seeks to establish facts that are "irrelevant" under the statutory scheme that mandates his detention, which classifies the challenge as substantive, rather than procedural. (Id. at 19–23.)

Second, Respondents maintain that Petitioner is not entitled to an individualized hearing because Congress created a mandatory detention scheme that the Supreme Court has upheld. (Id. at 24–28.)

Third, Respondents argue that even if the Court applied the three-part balancing test in Mathews, Petitioner's claim must still fail (Id. at 28–29.)

**1. Petitioner's Fifth Amendment Protections**

Petitioner is entitled to due process of law under the Fifth Amendment. The Fifth Amendment provides, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The United States Supreme Court has made clear that the "Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.

**2. Procedural vs. Substantive Due Process**

Respondents argue that Petitioner's due process claim should be classified as substantive, rather than procedural. In support, Respondents rely on Connecticut Dep't of Pub. Safety v. Doe, where the Supreme Court stated that "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme" and that if not, "[s]uch claims must ultimately be analyzed in terms of substantive, not procedural, due process." 538 U.S. 1, 8 (2003). Here,

Respondents note that Petitioner seeks to establish that he is entitled to a bond hearing to assess whether he is a flight risk or danger to the community. (Doc. 5 at 21.) Yet, Respondents contend that a bond hearing and the Mathews balancing test are both "irrelevant" under § 1225 "[b]ecause § 1225(b)(2)(A) requires mandatory detention and does not require these additional procedures." (Id.)

The court in Julio Victor R.R. v. Blanche discussed Doe in the context of the procedural due process balancing test; still, the Court is persuaded by its reasons to distinguish the case in the discussion here:

> Doe involves an altogether different context. The plaintiff in Doe challenged the constitutionality of a state law requiring him to register as a sex offender based upon a prior conviction. Doe claimed only that requiring him to register in this way resulted in reputational harm, not that it implicated his interest in freedom from confinement. By contrast, [Petitioner's] claim in this case directly implicates his fundamental interest in physical liberty. [In addition] . . . the Court disagrees that the INA alone sets the floor for the due process that is required; the Constitution can, and does, require more.

No. 26-CV-2853 (KMM/DJF), 2026 WL 2517137, at *7 (D. Minn. Aug. 26, 2026) (internal citations omitted). Consequently, the Court is not persuaded that Doe requires the Court to consider Petitioner's due process claim as substantive rather than procedural.

In addition, Petitioner here "undoubtably also argues that [his] detention without bond deprived [him] of [his] liberty without due process of law." United States. Lopez-Campos v. Raycraft, 175 F.4th 713, 733 (6th Cir. 2026). Because procedural due process challenges specifically address the "adequacy of the procedures" used to deprive someone of their liberty, the Court will consider Petitioner's procedural due process challenge as properly raised. Mathews, 424 U.S. at 335.

**3. Supreme Court Precedent**

Respondents argue that Supreme Court precedent confirms that mandatory detention pursuant to 8 U.S.C. § 1225(b)(2) satisfies due process. (Doc. 5 at 24–28.) In support, Respondents rely primarily on Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103 (2020). The Court continues to be unpersuaded that this case resolves the due process question in favor of Respondents.[2]

[2] Respondents do not appear to argue that the Eighth Circuit's decision in Banyee v. Garland, 115 F.4th 928 (8th Cir. 2024) precludes Petitioner's procedural due process argument. Instead, Respondents merely state that "Banyee and Demore are instructive" for the Court's analysis of mandatory detention under § 1225(b)(2). (Doc. 5 at 24.) Regardless, such argument has been consistently considered and rejected by this Court. See e.g., Abdirahmaan G. v. Warden, AFOD, Att'y Gen, ICE Director, No. CV 26-3649 (MJD/DJF), 2026 WL 3025904, at *2 (D. Minn. Oct. 8, 2026) (collecting cases).

Respondents contend that the Supreme Court's decision in Thuraissigiam affirms that Petitioner's mandatory detention without a bond hearing pursuant to § 1225(b)(2) complies with due process. (Doc. 5 at 25–26.) However, Respondents fail to acknowledge the unique factual circumstances giving rise to the challenge raised in Thuraissigiam. The Petitioner in Thuraissigiam did not raise a habeas corpus claim to challenge his detention; rather, he sought to use the habeas process to seek further review of his asylum claim. 591 U.S. 103, 140 (2020) ("[A]n alien in respondent's position has only those rights regarding admission that Congress has provided by statute."). The Thuraissigiam Court then did not "address whether the petitioner's detention itself was unlawful or inconsistent with the Due Process Clause and did not deal with a core habeas challenge to detention" like Petitioner raises here. R. M. v. Blanche, No. 26-CV-2283 (LMP/DLM), 2026 WL 1506306, at *6 (D. Minn. May 29, 2026).

Even if the Court's analysis in Thuraissigiam applied here, the case is still easily distinguishable on the facts. The petitioner in Thuraissigiam "was apprehended 25 yards from the border and was thereafter continuously detained," while the Petitioner here has lived in the United States for four years. Manuel G., 2026 WL 1256358, at *4. (emphasis added). The Court does not agree

with Respondents' position that "length of time [noncitizens] have resided in the United States unlawfully encourages aliens to evade immigration authorities not only upon entering the United States but for years on end." (Doc. 5 at 27.) Instead, the Court is persuaded that the factual predicate for Thuraissigiam "merely reinforces [the] longstanding understanding that noncitizens on the threshold of initial entry stand on a different footing than those who have passed through our gates." Lopez-Campos v. Raycraft,175 F.4th 713, 733 (6th Cir. 2026) (citation omitted) (cleaned up).

**4. The Mathews v. Eldridge Balancing Test**

To determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test that weighs the following:

> [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335.

**a. The First Mathews Factor**

The first factor requires the Court to consider how Petitioner's "private interest" will be affected. Mathews, 424 U.S. at 335. Respondents contend that

Petitioner's private interest is "significant in the abstract" but that if Petitioner truly "desires to be free from imprisonment, he need only ask," indicating that Respondents would facilitate his return to Mexico. (Doc. 5 at 28.) Further, Respondents argue that his "relatively short" time spent in the United States, his criminal history, and his lack of lawful status "minimize his priva[te] interest." (Id.)

The Court disagrees. The interest in being free from physical detention is the "most elemental of liberty interests." Hamdi, 542 U.S. at 529; Zadvydas, 533 U.S. at 690. The Court in Zadvydas made clear that "Petitioner's private liberty interest arises not from an interest in remaining in the United States, but from being free from physical restraint." Felipe S.P. v. Blanche, No. 26-CV-2212 (NEB/DJF), 2026 WL 1911656, at *8 (D. Minn. July 2, 2026) (citing Zadvydas, 533 U.S. at 696). Here, Petitioner has spent approximately four years living in the United States and has built a life and community for himself. He is married and has children, and he works in landscaping. (Doc. 1 ¶ 35.) Considering Petitioner demonstrates significant private interests affected by his ongoing detention, the first Mathews factor favors Petitioner.

### a. The Second Mathews Factor

The second Mathews factor requires the Court to consider the risk of an erroneous deprivation of Petitioner's liberty as well as "the degree to which additional or substitute procedural safeguards could ameliorate the risks of erroneous deprivation." Selvin Adonay E.M. v. Noem, 817 F. Supp. 3d 720, 734 (D. Minn. 2025) (citing Mathews, 424 U.S. at 335). The court in Jesus Alejandro G. A v. Blanche noted that detention during removal proceedings is "'constitutionally permissible'" but "the government's authority to detain noncitizens is not limitless" and "should advance two regulatory goals: (1) ensuring the appearance of noncitizens at their immigration proceedings; and (2) preventing danger to the community while those proceedings are ongoing." No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138, at *11 (D. Minn. May 18, 2026) (citing Demore v. Kim, 538 U.S. 510, 513 (2003); Zadvydas, 533 U.S. at 690)).

Respondents contend that the risk of erroneous deprivation is low because "Petitioner was arrested pursuant to a valid warrant supported by probable cause" and that his detention serves the government interests of "protecting the community and ensuring his presence at hearings in removal proceedings." (Doc. 5 at 29.)

The Court again disagrees with Respondents' myopic focus on § 1225(b)(2) detention. Petitioner has lived in the United States for four years. Despite his recent arrest, the state court released Petitioner. (Doc. 1 ¶ 37.) A bond hearing where both parties have an opportunity to be heard will allow the immigration judge to decide whether Petitioner's detention is, in fact, necessary to ensure his presence at future immigration proceedings and that he does not pose a danger to his community considering his community connections as well as his criminal history. Continuous detention, especially under his current conditions, does not fulfill the promise of Zadvydas that every person in this country is entitled to due process of law. 533 U.S. at 693; see also Pedro A.D.L.O.O., 2026 WL 948970 at *3. Without an individual hearing, the risk of erroneous deprivation of Petitioner's liberty is too great. The Court therefore finds that the second Mathews factor also weighs in favor of Petitioner.

**a. The Third Mathews Factor**

The third Mathews factor requires the Court to consider the government's interest "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. Respondents effectively repeat their argument under

the second factor here and contend that the government's interest is "substantial," noting that the "Supreme Court acknowledged the government's interests in detaining aliens during removal proceedings to ensure attendance and in maintaining public safety." (Doc. 5 at 29 (citing Jennings v. Rodriguez, 583 U.S. 281, 286 (2018).)

The Court acknowledges the strong governmental interest in enforcing immigration law and ensuring its uniform application. See Dep't of State v. Munoz, 602 U.S. 899, 911–12, 144 S. Ct. 1812, 1823, 219 L. Ed. 2d 507 (2024) ("T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens."). However, the Court believes that such "interest[] [is] not subverted by requiring the minimal procedural safeguard of a bond hearing." Manuel G., 2026 WL 1256358, at *5. Moreover, considering that other Courts of Appeals have reached the opposite conclusion from the Eighth Circuit in Avila, "Respondents are, therefore, already required to routinely offer bond hearings to people in identical circumstances . . . and requiring them to do so for him will not significantly change that landscape." Julio Victor R.R., 2026 WL 2517137, at *8 (collecting cases) (internal citations omitted).

In sum, the Court agrees that granting Petitioner a bond hearing – which is hardly an "administrative burden"– will give both parties an opportunity to adequately present arguments on the dangerousness and flight risks posed by Petitioner's specific circumstances. This due process safeguard will reduce the risk of erroneous deprivation of Petitioner's rights without imposing significant burdens on the Government.

**C. Mandatory Detention Pursuant to the Laken Riley Act**

In addition to arguing that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), Respondents also contend that Petitioner is subject to mandatory detention under the Laken Riley Act. (Doc. 5 at 30–32.) the Laken Riley Act, which amended 8 U.S.C. § 1226(c), requires detention for any noncitizen who 1) is deemed inadmissible under 8 U.S.C. § 1182(a)(6)(A), (6)(C), or (7); and 2) "is **charged with**, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or **any crime that results in death or serious bodily injury to another person**," 8 U.S.C. § 1226(c)(1)(E) (emphasis added). Respondents argue that

Petitioner's arrest for third degree assault in Minnesota state court subjects Petitioner to the mandatory detention provisions above. (Doc. 5 at 30–32.)

The Court rejects Respondents' position that Petitioner is subject to mandatory detention under the Laken Riley Act. First, Respondents have presented no evidence that Petitioner was initially detained pursuant to the Laken Riley Act. Rather, this appears to be a post-hoc justification advanced by counsel, rather than the actual basis for Petitioner's detention.

Moreover, even assuming that Petitioner is subject to mandatory detention under the Laken Riley Act, this Court has previously recognized that mandatory detention without an opportunity to be heard based on criminal charges, not criminal convictions, raises similar due process concerns as discussed above. See C.R.R. v. Bondi, 832 F. Supp. 3d 904, 908–09 (D. Minn. 2026). Accordingly, even if the Court were to reach the merits of Respondents' argument, it would likely reach the same conclusion about requiring a bond hearing.

**D. Remedy**

All the Mathews factors weigh in favor of Petitioner. Therefore, the Court concludes that mandatory detention pursuant to § 1225(b)(2) as applied to Petitioner violates his constitutional right to procedural due process. The

appropriate remedy for this constitutional deprivation is to provide him with an opportunity to be heard. In this case, that means a bond hearing.

Resolution of this issue renders discussion of Petitioner's other arguments unnecessary. See Faysal N. v. Noem, 825 F. Supp. 3d 844, 849 n.3 (D. Minn. Jan. 6, 2026) (when the court's decision on one of petitioner's arguments meant the petitioner's detention was unlawful, the court need not reach other arguments).

## III. ORDER

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. The Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** is **GRANTED IN PART** as follows:

   a. Respondents are ordered to provide Petitioner with a bond hearing within one week after the issuance of this Order;

   b. Respondents are ordered to file notice of such bond hearing directly with the Court within two (2) hours of its scheduling[3];

   c. Notice of the bond hearing must give Petitioner and/or his counsel a reasonable time to prepare;

[3] The purpose of this is to provide timely notice to Petitioner's counsel so that counsel can prepare for the bond hearing and/or find an immigration law attorney to represent Petitioner at the hearing.

d. The Immigration Judge is prohibited from denying the opportunity for a bond hearing based on a purported lack of jurisdiction;

e. If a bond hearing takes place that results in Petitioner's release, Respondents are ordered to:

i. Release Petitioner into Minnesota;

ii. At a safe time and place communicated at least two (2) hours in advance to Petitioner's counsel; and

iii. With all of Petitioner's personal effects in Respondents' possession, such as Petitioner's driver's license, immigration papers, passport, cell phone, keys;

f. If a bond hearing does not take place within one week, the Respondents are ordered to immediately release Petitioner from custody into Minnesota with the same conditions of release described in 1(e); and

2. Within 48 hours of the conclusion of the bond hearing or Respondents' decision to release Petitioner from custody, Respondents must file a status report with the Court detailing the results of the Bond Hearing or its actions related to release; and

3. Any motion for attorney fees and costs pursuant to the Equal Access to Justice Act must be filed within 21 days of entry of judgment in this matter, along with a well-reasoned memorandum of authorities explaining why an award of fees and costs is warranted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 5, 2026

s/Michael J. Davis
Michael J. Davis
United States District Court